UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-cr-00186-SRC |
| ) | |
| KYLIR DORSEY, ) | |
| ) | |
| Defendant. ) | |

**Memorandum and Order**

Claiming his previous legal counsel was ineffective, Kylir Dorsey seeks to withdraw his guilty plea. According to Dorsey, his guilty plea was not knowing and intelligent, and he is legally innocent of the charge against him. After careful consideration, the Court finds that Dorsey fails to show a fair and just reason for requesting the withdrawal and denies his motion.

**I.    Background**

   **A.    Pretrial proceedings**

On April 12, 2023, a federal grand jury charged Dorsey in a one-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Docs. 1–2. Two weeks later, law enforcement arrested Dorsey on a federal warrant, and he appeared for an initial appearance. *See* doc. 7. The Court[1] appointed the Federal Public Defender to represent Dorsey, doc. 10, and as a result, Assistant Federal Public Defender Rachel Korenblat entered her appearance on behalf of Dorsey, doc. 14. Less than a month later, Dorsey wrote a letter to the Court requesting new counsel due to a breakdown in his relationship with Korenblat. Doc. 19. On May 26, 2023, the Court[2] denied Dorsey's request for new counsel following a hearing. Doc.

---
[1] United States Magistrate Judge Patricia L. Cohen.
[2] United States Magistrate Judge Stephen R. Welby.

21. Several months later, on February 20, 2024, Korenblat filed notice of intent to waive pretrial motions on Dorsey's behalf. Doc. 30. The Court then set trial for April 16, 2024. Doc. 32.

B.    **Change-of-plea hearing**

Rather than proceeding to trial, Dorsey chose to plead guilty on March 27, 2024. Doc. 33. Dorsey did not have a guilty-plea agreement with the United States. *See* doc. 34. Instead, Dorsey submitted a document titled "Kylir Dorsey Change of Plea" that included the following facts of his offense conduct, which provided a basis for his guilty plea:

> On October 21, 2022, Defendant Kylir Dorsey possessed a Colt Double Eagle, .45 caliber semiautomatic pistol while driving a car near the intersection of Lucas and Hunt and West Florissant, located in St. Louis County within the Eastern District of Missouri. The firearm had traveled in interstate commerce. The firearm can expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law.
>
> At the time Mr. Dorsey possessed the firearm, he knew he had previously been convicted in a court of law of a crime punishable by a term of imprisonment exceeding one year.

*Id*. Dorsey and Korenblat signed the document. *Id*.

At the hearing, the Court conducted a thorough plea colloquy with Dorsey. First, the Court asked a series of questions to determine that Dorsey was competent to proceed with the change-of-plea hearing. Doc. 65, Plea Tr. at 2:15–6:3. Next, the Court inquired about Dorsey's satisfaction with his Korenblat's representation. *Id*. at 6:9–6:14. Dorsey responded as follows:

> Basically, one of the situations was at my plea. I wouldn't of had a problem taking a plea as far as the prosecutor offering me, but there was only one thing that stuck out. I know I'm guilty for having the firearm, but it said that there was 15 rounds in the magazine and I know it was only seven rounds.
>
> Also, so they're supposed to show me a proper chain of custody as far as in my discovery, and the discovery, it doesn't have any photos of the weapon or of the magazine. And the police cam, the body cam on Officer Linn who took the weapon out of my car and put it in his, it only shows him driving to the police department, but then it cuts off.

2

> So my biggest thing was like I know I'm guilty for having a weapon, but it's like I didn't feel right signing a plea knowing that it said that it had 15 bullets inside the magazine when I know it was only seven in there.
>
> So I asked her if she can go to the police station and get this camera footage showing the proper chain of custody, him driving to the police station and him getting out of the car with the weapon and taking it in, you know, because they have cameras, and going to the evidence room.
>
> She said that they didn't have footage, you know, and I know they have to have this. You know, they have to have this to show this to me, so it was kind of hard for me to take a plea.
>
> So I just figured I'll take an open plea and be able to explain this to you.

*Id*. at 6:15–7:16. In response, Korenblat stated the following:

> Your Honor, I know Mr. Dorsey had an issue with the number of bullets in the magazine. I did do an evidence view when he brought up the issue. I took photos and there was a piece of paper on top of the evidence with the chain of custody. I offered to show that to him.
>
> However, he was concerned about having realtime video footage from the arrest, and we do not have that captured on body camera, as he explained. I've asked Mr. Martin if there is any other body camera out there. I don't have any other.
>
> Honestly, though, until this moment I never asked whether there was surveillance footage within the police department. I never asked that question. It didn't occur to me to go there. I would imagine by this point there probably isn't.
>
> But I tried my best to answer the questions and that's where we're at.
>
> . . . .
>
> I think that's what Mr. Dorsey -- I apologize. For me, I thought he was focusing on body camera footage, not necessarily video surveillance within the police department itself of them conducting a realtime search of the number of bullets.
>
> I didn't appreciate that so I did not ask that direct question of Mr. Martin. I asked about body camera footage.

*Id*. at 7:21–8:11, 8:15–8:21. Following Korenblat's response, the Court asked the counsel for the United States, Assistant United States Attorney Matt Martin, "whether there is camera footage of

3

the review or inspection of the firearm or the magazine to determine how many rounds it had in it at the time that Mr. Dorsey possessed it." *Id*. at 9:1–4. Martin responded as follows:

> Not to my knowledge. None of that video, if it exists, has been provided to the Government. What was provided and produced to defense counsel was the officer's body-worn camera of the arrest, and the seizure of the firearm and the magazine from the vehicle.
>
> There was footage from the post-arrest interview with Mr. Dorsey that occurred at the police station and then, of course, as Ms. Korenblat indicated, I believe it was last week we did an evidence viewing where the sealed firearm box was brought in, unsealed, opened, and jointly, in the presence of the case agent, we cataloged, inventoried and counted the number of rounds that were seized and packaged as part of this investigation.

*Id*. at 9:5–9:17. Following the exchange, Dorsey reiterated that he didn't "mind pleading out, but it says 15 and [he] kn[e]w it was only seven." *Id*. at 10:6–10:7.

The Court explained that the number of rounds that were in the magazine of the firearm is a factual dispute that can be handled at sentencing. Specifically, the Court stated:

> I understand. So what you're talking about, then, Mr. Dorsey, is a factual dispute as to what the evidence would show in this case but you, as I understand it, are prepared to admit, like you said, that you are guilty of being a Felon in Possession of a Firearm.
>
> Your factual dispute is as to the number of rounds that were in the magazine of the firearm at the time you possessed it, so that's a factual dispute that can be handled at sentencing to the extent that it affects sentencing issues, if it would affect sentencing issues. And I'm not in a position to make that determination at this time.
>
> So my question for you is with that being the case -- well, let me first ask, do you understand what I just explained?
>
> . . . .
>
> All right. So in light of this factual dispute that you have that doesn't go to the elements of the offense that you're intending to plead guilty to, that's an issue that would be worked out or dealt with at sentencing to the extent that it would affect the sentencing in this case. Do you understand that?

*Id*. at 10:8–10:20, 11:3–11:8. Dorsey confirmed that he understood. *Id*. at 10:21, 11:9. The Court then discussed with Dorsey whether Dorsey wanted to proceed with the change-of-plea hearing:

> The Court: With that, let me ask you, how do you wish to proceed? Do you wish to go forward with this hearing and make a determination as to whether you're going to change your plea at the end of the hearing, or do you wish to stop the hearing and not enter a plea, or not go forward with the hearing about whether you're going to enter a plea of guilty?
>
> [Dorsey]: Go forward.

*Id*. at 11:10–11:16. The Court asked if Dorsey had any other concerns with Korenblat's representation, and Dorsey confirmed that he did not. *Id.* at 11:17–11:21.

The Court next discussed Dorsey's waiver of pretrial motions. The colloquy went as follows:

> The Court: So I'm going to turn to another topic, which is waiving pretrial motions and trial rights.
>
> Do you understand that by pleading guilty, you'll be waiving or giving up the right to file any pretrial motions, including motions to suppress evidence or any statements that you may have made?
>
> [Dorsey]: Yes, Sir.
>
> The Court: Did you discuss that decision with Ms. Korenblat?
>
> [Dorsey]: Yes.
>
> The Court: Are you fully satisfied with the decision that you and she have made about waiving pretrial motions?
>
> [Dorsey]: Yes.

*Id*. at 11:22–12:9. Dorsey confirmed that he was fully satisfied with waiving pretrial motions. *Id*. The Court then reviewed with Dorsey the many rights he would waive or give up by pleading guilty, which Dorsey confirmed he understood. *Id*. at 12:10–14:17.

The Court confirmed that Dorsey understood and admitted to the elements of his offense:

> The Court: The elements of the offense of Felon in Possession of a Firearm are as follows: One, that you were convicted of a crime punishable by a term of imprisonment exceeding one year; Two, you thereafter knowingly possessed a firearm; Three, at the time you possessed the firearm, you knew you had been convicted of a crime punishable by a term of imprisonment exceeding one year; and, Four, at some point before or during your possession of the firearm, the firearm was transported in interstate commerce or across a state line.
>
> Do you understand all of those things?
>
> [Dorsey]: Yes, sir.
>
> The Court: Did you, in fact, do all of those things as relates to this case and this indictment?
>
> [Dorsey]: Yes, sir.

*Id*. at 16:16–17:4. The Court then confirmed that Dorsey agreed and admitted to the facts set forth in the document titled "Kylir Dorsey Change of Plea," which Dorsey confirmed he did. *Id*. at 17:5–18:4.

Dorsey denied that he had "any agreements or understandings or deals with respect to [his] plea of guilty [or] [his] sentencing in this case," that "anyone at any time made any promises, representations[,] or assurances to" him, and that "anyone [had] made any threats against [him] in an attempt to get [him] to enter a plea of guilty in this case." *Id*. at 19:2–19:10. The Court ensured that Dorsey had discussed the Sentencing Guidelines and Sentencing Table with Korenblat, and that he understood the range of punishment for his offense. *Id*. at 20:3–21:3, 22:22–27:3. After giving Dorsey an opportunity to speak with Korenblat, the Court asked

Dorsey how he wished to plea to the charge in count one of the Indictment. *Id*. at 27:4–27:8. Dorsey responded, "Guilty." *Id*. at 27:9. The Court made the following finding:

> The Court finds that in the case of *The Unite[d] States of America v. Kylir Dorsey* that Mr. Dorsey is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of his plea, that his plea of guilty is a knowing and voluntary plea, made willingly and intelligently, and it is supported by an independent factual basis containing each of the essential elements of the offense charged.

*Id.* at 27:20–28:52. The Court then accepted Dorsey's guilty plea and "defer[red] any decisions as to the[] factual matters that [Dorsey] mentioned [unitl] sentencing." *Id.* at 28:3–28:5.

When setting sentencing, Martin and Korenblat indicated that they both anticipate a lengthy sentencing because there would potentially be "a dispute about whether there was a high-capacity magazine, number of bullets aside, and whether or not it meets the definition within the Guidelines." *Id.* at 28:13–22. The Court ultimately set sentencing for 90 minutes. *Id*. at 29:7–29:8.

### C. Korenblat's first motion to withdraw

Less than a month after the change-of-plea hearing, Korenblat moved to withdraw, citing a breakdown in her relationship with Dorsey. Doc. 37. At the hearing on her motion, however, Korenblat orally withdrew her motion. Docs. 39–41.

### D. PSR objections

Korenblat filed several objections to the Presentence Investigation Report on Dorsey's behalf. Doc. 43. Specifically, Dorsey objected to (1) the PSR's recommendation that Dorsey's base offense leave is 20 under U.S.S.G. § 2K2.1(a)(4)(B), because "'the offense involved a semiautomatic firearm capable of accepting a large capacity magazine,' a defined term with the Guidelines' commentary," doc. 43 at 1 (first quoting doc. 42 at ¶ 15; then citing U.S. Sent'g Guidelines Manual § 2K2.1 cmt. app. n.2 (U.S. Sent'g Comm'n 2024); and (2) "the PSR's

7

finding that the magazine at issue contained 15 rounds of ammunition," *id*. at 2. Dorsey argues that, even if the firearm can accept the magazine, it does not have the ability to fire many rounds without reloading because the magazine was broken. *Id*. at 3–5. Dorsey cites to a forensic analysis of the magazine that found that the magazine follower (a component that the rounds, or "bullets," rest on and that feeds the rounds into the mouth of the magazine to facilitate the feeding of the round into the firearm) was missing and, therefore, the magazine would not function as manufactured. *See* doc. 43 at 3;[3] doc. 43-1 at 2.

In response, the United States provided notice of its intent "to offer the testimony of St. Louis County Police Department Officer Katherine Castillo, the firearms examiner who analyzed both the firearm and magazine at issue, at the sentencing hearing." Doc. 52 at 2. The United States anticipated that Officer Castillo would testify "that, after further investigation, she determined that the magazine did in fact have a follower and functioned as manufactured." *Id*. The United States also claims that it "provided defense counsel with a copy of Officer Castillo's amended firearm analysis report that reflects these findings." *Id.*

### E.   Korenblat's second motion to withdraw

Five days before sentencing, Korenblat filed a second motion to withdraw, again citing a motion to breakdown in her relationship with Dorsey. Doc. 56. The Court held a hearing, granted Korenblat's motion to withdraw, and appointed Joseph M. Hogan, a Criminal Justice Act attorney, to represent Dorsey. Docs. 59–60.

### F.   Dorsey's motion to withdraw his plea of guilty

On December 30, 2024, Hogan filed a motion to withdraw Dorsey's guilty plea. Doc. 63. In the motion, Dorsey alleges that Korenblat "was ineffective and therefore his guilty plea was

---

[3] The Court cites to page numbers as assigned by CM/ECF.

not knowing and intelligent." *Id*. at 1. Additionally, Dorsey claims "that he is legally innocent of the charge against him." *Id*. The United States filed a response opposing Dorsey's motion. Doc. 69.

II. **Standard**

A district court may permit a defendant to withdraw a guilty plea before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "While the standard is liberal, the defendant has no automatic right to withdraw a plea." *United States v. Van Doren*, 800 F.3d 998, 1001 (8th Cir. 2015) (quoting *United States v. Heid*, 651 F.3d 850, 853 (8th Cir. 2011)). The burden is on the defendant to establish fair and just grounds for the withdrawal of a guilty plea. *United States v. Haubrich*, 744 F.3d 554, 557 (8th Cir. 2014). Ineffective assistance of counsel "can be a fair and just reason for withdrawal if the defendant can demonstrate both that counsel's performance was deficient and that the deficiency prejudiced the defendant." *Id*. (citation omitted). And, even if such a fair and just reason exists, before granting the motion a court must consider "whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993) (citation omitted). "If the defendant fails to establish a fair and just reason for withdrawing the guilty plea, the trial court need not address the remaining considerations." *Id*. (citation omitted).

III. **Discussion**

A. **Ineffective assistance of counsel**

Dorsey argues that Korenblat provided ineffective assistance in a variety of ways, but all his arguments relate to one issue—how many rounds of ammunition were loaded into the drum

9

magazine that law enforcement seized from Dorsey's car. Doc. 63 at 5–8. But Dorsey's motion fails to show that Korenblat's performance was deficient or that he was prejudiced by her deficient performance.

Dorsey claims that Korenblat failed to adequately investigate the sufficiency of the evidence and failed to inform him of the discrepancy regarding the number of rounds. *Id*. at 6. This is an issue that Dorsey raised at his change-of-plea hearing before he entered a guilty plea. At the hearing, Dorsey advised the Court that he had concerns about the "proper chain of custody" and law enforcement's assertion that he had 15 rounds of ammunition in the drum magazine. Doc. 65, Plea Tr. at 6:15–7:16. Dorsey explained that he asked Korenblat to obtain, from the police department, camera footage that shows law enforcement conducting a search of the numbers of rounds, but Korenblat indicated that there was no footage. *Id*.

In response, Korenblat explained that she conducted "an evidence view" after Dorsey raised concerns about the number of rounds in the drum magazine. *Id*. at 7:21–7:23. Korenblat told the Court that she took photos of the evidence and viewed the chain of custody, which she offered to show Dorsey. *Id*. at 7:23–7:25. The United States confirmed that it did, in fact, conduct an evidence viewing with Korenblat and that it is not aware of any video that shows law enforcement conducting a search of the number of rounds in the drum magazine. *Id*. at 9:5–9:17.

Following this discussion, Dorsey confirmed that he had no issue with pleading guilty but reiterated that he had only seven rounds of ammunition in the drum magazine. *Id*. at 10:1–10:7. The Court explained to Dorsey that the number of rounds in the drum magazine is a factual issue that can be handled at sentencing, which Dorsey confirmed that he understood. *Id*. at 10:8–10:21. The Court then asked whether Dorsey wanted to go forward with the change-of-plea

hearing to which Dorsey replied that he would like to go forward. *Id.* at 11:10–11:16. At the conclusion of the hearing, Dorsey pleaded guilty. *Id*. at 27:7–27:19.

Dorsey also claims his waiver of filing pretrial motions "was not filed with [his] knowing and intelligent consent." Doc. 63 at 7. At the plea hearing, the Court asked Dorsey if he understood that by pleading guilty he will be waiving or giving up the right to file any pretrial motions, including motions to suppress evidence or any statements that he may have. *Id*. at 11:22–12:2. Dorsey confirmed that he understood. *Id*. at 11:24–12:3. When asked whether he was fully satisfied with his decision to waive pretrial motions, Dorsey responded "yes." *Id*. at 12:7–12:9.

When discussing sentencing, the parties agreed that sentencing would last longer than normal due to the "dispute about whether there was a high-capacity magazine, number of rounds aside, and whether or not it meets the definition within the Guidelines." *Id*. at 28:14–28:22. Following the filing of the disclosure PSR, Korenblat filed objections to the PSR on Dorsey's behalf, objecting to (1) the PSR's recommendation that Dorsey's base offense level is 20 under U.S.S.G. § 2K2.1(a)(4)(B), because "'the offense involved a semiautomatic firearm capable of accepting a large capacity magazine,' a defined term with the Guidelines' commentary," (first quoting doc. 42 at ¶ 15; then citing U.S. Sent'g Guidelines Manual § 2K2.1 cmt. app. n.2 (U.S. Sent'g Comm'n 2024); and (2) "the PSR's finding that the magazine at issue contained 15 rounds of ammunition," *id.* at 2. In response, the United States intended to offer testimony. Doc. 52.

As shown above, the plea colloquy contradicts the assertions in Dorsey's motion. At the plea hearing, the Court concluded:

> Dorsey is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of his plea, that his plea of guilty

11

> is a knowing and voluntary plea, made willingly and intelligently, and it is supported by an independent factual basis containing each of the essential elements of the offense charged.

Doc. 65, Plea Tr. at 27:20–28:2. The Court stands by its conclusion. Dorsey fails to demonstrate that Korenblat's performance was deficient, and that the alleged deficiency prejudiced him. Dorsey, therefore, fails to show that a fair and just reason exits to allow him to withdraw his guilty plea.

### B. Legal innocence

Because Dorsey "fails to establish a fair and just reason for withdrawing the guilty plea, the trial court need not address the remaining considerations." *Nichols*, 986 F.2d at 1201 (citation omitted). The Court, however, finds it important to point out that Dorsey made several admissions about his guilt under oath at the change-of-plea hearing. *See* doc. 65, Plea Tr. at 6:18–6:20 ("I know I'm guilty for having the firearm, but it said that there was 15 rounds in the magazine and I know it was only seven rounds."); *id*. at 7:2–7:5 ("So my biggest thing was like I know I'm guilty for having a weapon, but it's like I didn't feel right signing a plea knowing that it said that it had 15 bullets inside the magazine when I know it was only seven in there."). Additionally, Dorsey signed a document titled "Kylir Dorsey Change of Plea," admitting to possession of the firearm. Doc. 34. The Court confirmed that the document contained his signature, that he had a chance to discuss the document with Korenblat before he signed it, and that he understood that he was pleading guilty to one count of possession of a firearm by a convicted felon. Doc. 65, Plea Tr. at 18:5–19:15.

**IV. Conclusion**

Accordingly, the Court denies Dorsey's [63] Motion to Withdraw Plea of Guilty. The Court will set sentencing by separate order.

So ordered this 27th day of March 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE